

RECEIVED
IN LAKE CHARLES, LA

DEC 28 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CARL LEWIS, individually and on behalf of the minor child, MORGAN LEWIS | : | DOCKET NO. 2:05 CV 2129 |
| VS. | : | JUDGE MINALDI |
| THE CITY OF LAKE CHARLES, DONALD D. DIXON, KEVIN CHARLES GASAWAY and ABC INSURANCE COMPANY | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment Under Rule 56, filed by the City of Lake Charles and Donald D. Dixon, the Chief of the Lake Charles Police Department ("the defendants") [doc. 18]. The plaintiff, Carl Lewis[1] (hereinafter "Lewis"), individually and on behalf of Morgan Lewis, filed an opposition [doc. 35]. The defendants filed a Reply [doc. 36]. Trial is scheduled for February 25, 2007.

## FACTS

This lawsuit arises out of the fatal shooting of Courtnee Lewis Gasaway (hereinafter "Courtnee"), who was murdered on December 14, 2004 by her ex-husband, Kevin Charles Gasaway (hereinafter "Kevin"), a co-defendant.[2] The Gasaways were married on August 11,

---

[1] Carl Lewis is the guardian and tutor of his minor granddaughter, Morgan Lewis. Def.'s Mot. for Summary Judgment, at 1.

[2] *Id.*

1

2001 and had several domestic violence incidents.[3] On July 7, 2002, Kevin and Courtnee were both arrested on domestic violence charges of simple battery, though charges were not pursued.[4] On April 19, 2003, Kevin and Courtnee were arrested on domestic violence charges of simple battery, and Kevin was charged with violating a protective order.[5] On June 5, 2003, Kevin was arrested and later convicted in Calcasieu Parish for simple battery and false imprisonment of Courtnee.[6] On November 30, 2003, Kevin was arrested on violation of a protective order and aggravated battery on Courtnee and a friend, Ms. Harris.[7]

On August 5, 2004, Kevin was arrested for violation of a protective order and aggravated assault.[8] Officer John L. Loftin responded to to the call in which Courtnee alleged that Kevin had assaulted her by throwing her to the floor, pinning her with his knee and threatening to kill her as he held a pair of scissors at her throat.[9] Despite her protective order, Courtnee had been living with Kevin since early June 2004.[10] In the August 5, 2004 Request for Formal Prosecution, Courtnee expressed in writing that "she did not wish to pursue charges and/or testify

---

[3] *Id.* at 1-4; Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 2-4.

[4] Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 2.

[5] *Id.*

[6] *Id.* Kevin received a suspended sentence and probation, and signed a Louisiana Abuse Protective Order, dated August 19, 2003, that required Kevin to refrain from contact with Courtnee and Morgan, Courtnee's child from a previous relationship. *Id.*

[7] *Id.* at 3.

[8] Def.'s Mot. for Summary Judgment, at 1; Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 3.

[9] Def.'s Mot. for Summary Judgment, at 1.

[10] *Id.* at 2.

in court as a witness against" Kevin."[11]

On September 3, 2004, Courtnee swore out a criminal affidavit alleging that Kevin was in violation of her protective order by coming to her residence at 3:30 a.m. and refusing to leave.[12] She stated that when she refused to allow Kevin entrance he rammed his truck into her vehicle, which pushed it into her residence.[13] Kevin was arrested and booked on September 7, 2004 for violation of a protective order, and was later released on a $10,000 bond on September 16, 2004.[14] On October 5, 2004, Detective Bell submitted charges titled Violation of Restraining Order to the Calcasieu Parish District Attorney, which were rejected on November 8, 2004 because "domestic violence victim invalidated order by moving in with [Kevin Charles Gasaway].[15]

On September 28, 2004, Courtnee filed a Petition for Divorce against Kevin and also sought an immediate temporary restraining order (TRO) enjoining Kevin from all contact.[16] On

---

[11] *Id.* Detective Thomas Bell was assigned the follow-up investigation and, without Courtnee's cooperation, submitted the case to the Calcasieu Parish District Attorney's office seeking charges. *Id.*; *see also* Pl.'s Ex. A (Bell Aff.) The prosecutor rejected the charges for insufficient evidence, which is believed to have been Courtnee's written expression not to cooperate and the fact that Courtnee invalidated the protective order by voluntarily moving in with Kevin. *Id.*; *see also* Pl.'s Ex. A (Bell Aff.)

[12] Def.'s Mot. for Summary Judgment, at 2; Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 3.

[13] Def.'s Mot. for Summary Judgment, at 2; Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 3.

[14] Def.'s Mot. for Summary Judgment, at 3; *see also* Pl.'s Ex. A (Bell Aff.)

[15] Def.'s Mot. for Summary Judgment, at 3; *see also* Pl.'s Ex. A (Bell Aff.)

[16] Pl's Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 3.

3

October 15, 2004, the district court issued another protective order against Kevin, who allegedly repeatedly violated the protective order.[17] According to Lewis, the Lake Charles Police Department was always notified but failed to arrest Kevin for these violations.[18] Lewis does not cite any supporting evidence that the LCPD was notified. By contrast, the LCPD states that it did not receive any communication from or on behalf of Courtnee advising of any threat from Kevin, or that Kevin violated any restraining order, and provides affidavits by Police Chief Dixon and by Detective Bell.[19]

On December 2, 2004, Courtnee's request for a permanent injunction was granted and a bench warrant was issued by the state district court for the arrest of Kevin due to his repeated violation of the protective order.[20] On December 10, 2004, a second bench warrant was issued by the state district court for Kevin for the same reason.[21] In both instances, Lewis argues that the LCPD failed to arrest Kevin in enforcement of those warrants.[22] The LCPD maintains that "all bench warrants for failure to make a court appearance are enforced by the Calcasieu Parish Sheriff's Office Warrants Division, which is independent of the LCPD."[23]

On December 14, 2004, Kevin forcibly entered Courtnee's home, beat her, sexually

---

[17] *Id.* at 4.

[18] *Id.*

[19] Def.'s Mot. for Summary Judgment, at 3; *see also* Pl.'s Ex. A (Bell Aff.); Pl.'s Ex. B (Dixon Aff.)

[20] Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 4.

[21] *Id.*

[22] *Id.*

[23] Def.'s Mot. for Summary Judgment, at 3; *see also* Pl.'s Ex. B (Dixon Aff.)

abused her, and fatally shot her in the head and neck.[24] Plaintiff Carl Lewis, on behalf of himself and the minor child, Morgan Lewis, filed suit on December 13, 2005 against the defendants under 42 U.S.C. § 1981 *et seq.*, particularly 1983, to redress the deprivation under color of law, statute, ordinance, regulation, custom, and/or usage under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, as well as Louisiana state tort law.[25]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a

---

[24] Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 4.

[25] Compl. ¶ 1.

whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## ANALYSIS

### Municipal Liability

Municipal liability under § 1983 requires the plaintiff to identify three things: a policy maker, an official policy or custom, and that the official policy or custom is the "moving force" behind a violation of constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). The unconstitutional conduct must be "directly attributable" to the municipality through an official action. *Id.* Rather than prove an official policy or custom, the plaintiff may alternatively demonstrate a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). The Supreme Court has held that the inadequacy of police training may confer municipal liability under § 1983 only "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Lewis argues that there is a "wholesale lack of training by LCPD on matters of domestic violence." All LCPD officers receive their Peace Officers Standards and Training ("POST") certification through a regional academy. The domestic violence portion of the training takes a few hours of time and is "very very simplistic."[26] Lewis also takes issue with the short length of the domestic violence policy, which is four pages, and the fact that the policy has not been

---

[26] Pl.'s Ex. B (Lofton Dep. 16-17).

updated since 2002.[27] Lewis also argues that the LCPD is improperly bypassed when a domestic or criminal judge issues a protective order because the LCPD relies on the Sheriff's office to make entries into the NCIC, a public registry.[28]

Further, Lewis argues that the failure to advise Courtnee of the availability of a Signal 11[29] was in deliberate indifference to Courtnee's rights. Chief Dixon said domestic violence victims could also fill out a Signal 11 request to obtain increased patrol.[30] The plaintiff also takes the position that the two bench warrants, from December 2, 2004 and December 10, 2004, were not properly enforced by the LCPD. Lewis argues that in light of the number of domestic violence calls the LCPD receives, the training is inadequate and the failure to advise of the availability of a Signal 11 demonstrates a "deliberate indifference" to the safety of domestic violence victims.

The defendants argue that Lewis has failed to identify a policy maker, and only allege in conclusory fashion that the City failed to adequately investigate and train, which resulted in a deprivation of Lewis' constitutional rights. The defendants argue that none of the LCPD policies demonstrate a "deliberate indifference" to the safety of domestic violence victims. The defendants note that the LCPD's POST training and the LCPD's standards are certified by the Commission on Accreditation for Law Enforcement Agencies, a national agency that establishes

---

[27] Pl.'s Ex. A (Dixon Dep. 11).

[28] *Id.* at 12.

[29] A Signal 11 is a "no trespassing" sign that is typically put on a property upon request when the occupant is going out of town. Pl.'s Ex. C (Bell Dep. 26-27).

[30] Pl.'s Ex. A (Dixon Dep. 37-38).

standards for local police departments.[31] The defendants also note that the LCPD has a domestic violence policy. If there is a complaint of domestic violence, there is always a follow-up report.[32] If the subject is still on the scene and the police have probable cause, they can make an arrest; if not, the police will complete a report and forward it to the District Attorney to determine whether there is probable cause to issue a warrant.[33] Dixon indicated that the biggest obstacle the LCPD faces with domestic violence is often the victim's unwillingness to prosecute.[34] The LCPD also advises the victims of their rights, such as the ability to file for a protective or restraining order and the availability of the women's shelter.[35]

Furthermore, Sergeant Bell stated that a Signal 11 was not intended for domestic violence victims because Signal 11 signs typically have a limited time frame.[36] The LCPD argues that a Signal 11 is also not appropriate for domestic violence protection because a patrol officer cannot see what is going on behind closed doors.[37] In fact, the use of a Signal 11 could create a false sense of security in the victim.[38] The defendants also note that the Sheriff's Office, not the

---

[31] Pl.'s Ex. A (Dixon Dep. 7).

[32] *Id.* at 12.

[33] *Id.* at 12-13.

[34] *Id.* at 13. Once the prosecution form is submitted to the D.A.'s office, the LCPD's role in prosecution is over. *Id.*

[35] *Id.* at 14.

[36] *Id.*

[37] Pl.'s Ex. B (Loftin Dep. 53).

[38] Pl.'s Ex. C (Bell Dep. 39).

LCPD, is responsible for enforcing bench warrants.[39] The LCPD is without knowledge of a bench warrant unless something led the LCPD to run a check for outstanding warrants.[40]

This court finds that the LCPD did not display deliberate indifference with respect to its training program. The LCPD received national accreditation for its training program, had a manual to address domestic violence, and trained its officers to respond to domestic violence. Therefore, the LCPD's policies do not confer municipal liability. Moreover, aside from merely alleging that the LCPD should have arrested Kevin for the December bench warrants, Lewis does not provide any competent summary judgment evidence to controvert the defendants' summary judgment evidence that the Sheriff's Department, not the LCPD, is responsible for enforcing bench warrants.

### Liability Under the Fourteenth Amendment

The plaintiff contends that the defendants violated the Fourteenth Amendment's Due Process Clause. The Supreme Court recently held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the due process clause...this result reflects our continued reluctance to treat the Fourteenth Amendment as a 'font for tort law.'" *Castle Rock v. Gonzalez*, 545 U.S. 748, 768 (2005). Thus, any failure to arrest Kevin did not violate the Due Process Clause.

The plaintiff also argues that recovery is permissible under two alternative theories: a "special relationship" theory and a "state created danger" theory. In *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989), the court held that without a "special

---

[39] Def.'s Ex. B (Dixon Aff.)

[40] Pl.'s Ex. A (Dixon Dep. 46).

relationship," the Due Process clause did not require the public body to protect the life or property of its citizens against an invasion by a private actor. The Fifth Circuit, since *DeShaney*, has "held consistently that only when the state, by its affirmative exercise of power, has custody over an individual *involuntarily or against his will* does a 'special relationship' exist between the individual and the state." *Walton v. Alexander*, 44 F.3d 1297, 1303-04 (5th Cir. 2000) (en banc). Under these standards, there was no special relationship between Courtnee and the LCPD.

Other federal circuit courts have recognized that the Due Process clause also confers liability on state actors for foreseeable injuries where they knowingly place one in danger of harm by a private individual. *Rivera v. Houston Independent School District*, 349 F.3d 244, 249 (5th Cir. 2003). The Fifth Circuit has not recognized the "state created danger" theory as implicating the Due Process Clause. *Id.* The state-created danger theory requires that 1.) the state actor increased the danger to the plaintiff, and 2.) the state actor acted with deliberate indifference. *Id.* Even if the Fifth Circuit recognized the state-created danger theory, this court does not find that Lewis could satisfy its requirements.

### State Negligence

Lewis also brings suit under a state negligence theory. The defendants argue that discretionary immunity under LA. REV. STAT. ANN. § 9:2798.1(B) applies. Under LA. REV. STAT. ANN. § 9:2798.1(B), a public body is not liable "based upon the exercise or performance or the failure to exercise or perform their policy making or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Thus, when an officer acts, the question of whether an action was discretionary or not is dispositive of whether the agency is entitled to immunity. *Sarpy v. Energen Resources*, 2005 WL 2036880 (E.D. La. 2005).

"A police officer's exercise of discretion is a major element in carrying out the broad scope of his duty to maintain peace and order, enforce the law, prevent crime, and protect the citizenry." *Boutin v. Perrin*, 796 So.2d 691 (La. App. 3 Cir. 4/25/01). Here, the failure to inform Courtnee of a Signal 11 was discretionary. The failure to advise was protected by discretionary immunity, since the officers testified that often Signal 11s were not appropriate for domestic violence problems and they gave the victims a false sense of security.

When discretionary immunity is not available, liability is based on a traditional duty-risk analysis. *Id.* This test requires the plaintiff to: demonstrate the duty owed to the plaintiff, show that the duty was breached, prove that the conduct in question was the cause-in-fact, and prove that the risk of harm was within the scope of protection afforded by the duty breached. *Hardy v. Bowie*, 744 So.2d 606, 613 (La. 1999). The question of duty is one of law, and the imposition of a duty must be supported by a statute or jurisprudential rule. *Id.* at 614. Police officers have a duty to "act reasonably to investigate a possible violation of the law and to protect citizens who may be harmed by the violation." *Id.*

Lewis has not presented any evidence that the LCPD failed to act reasonably to investigate domestic disputes between Kevin and Courtnee. The LCPD answered each call, submitted reports, and attempted to prosecute–even though Courtnee expressed in writing that she did not want to prosecute. Moreover, Lewis fails to counter LCPD's evidence that the LCPD did not have legal authority to arrest Kevin on the December 2004 bench warrants. Thus, Lewis cannot show that the LCPD failed to act reasonably.

## CONCLUSION

Based on the pleadings, affidavits, and deposition testimony, this court finds that there are

no material issues of fact. Based on the undisputed facts, for the reasons stated above, the defendants are not liable under municipal liability, the Due Process Clause, or state negligence principles. Accordingly, the defendants' Motion for Summary Judgment is hereby granted.

Lake Charles, Louisiana, this __27__ day of ____Dec____, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

12